Filed 12/3/21  Gulli v. San Joaquin Area Flood Control Agency CA3
Opinion following rehearing

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| DOMINICK GULLI, | C088010 |
| Plaintiff and Appellant, | (Super. Ct. No. STKCVUWM20150011880) |
| v. | |
| SAN JOAQUIN AREA FLOOD CONTROL AGENCY, | |
| Defendant and Respondent. | |

Plaintiff Dominick Gulli's company, Green Mountain Engineering, was one of two companies to submit proposals to build a flood gate to address potential flooding in Stockton.  Gulli's proposal, which claimed a flood gate was unnecessary, was not selected by defendant San Joaquin Area Flood Control Agency (Agency).[1]  After the Agency certified a final Environmental Impact Report (EIR) and approved the selected

[1]  The City of Stockton, San Joaquin County, and the San Joaquin County Flood Control and Water Conservation District created this joint power authority to provide flood protection services to the City of Stockton and unincorporated surrounding areas.

1

project, Gulli petitioned for a writ of mandate, seeking, among other things, to vacate the EIR, suspend all activity, and require the Agency to contract with him. The trial court ultimately denied Gulli's petition.

On appeal, Gulli contends: (1) the administrative record does not conform to Public Resources Code section 21167.6[2]; (2) the selected project is not needed for flood protection; and (3) the EIR failed to inform the public and elected officials of various environmental consequences. As will be seen, many of Gulli's contentions are grounded on his belief that his solution is superior, as well as his expert disagreement with the Agency's determinations. Gulli argues on appeal that the flood control issue could be best addressed "by simply buying diesel pumps and piping such that if a 100-year storm rains in Stockton and the power goes out the pumps can evacuate the water into the river." As we shall discuss, the law is clear that disagreement amongst experts does not make an EIR inadequate.

After oral argument and the opinion in this case was filed, Gulli filed a motion to recuse the Hon. Ronald Robie, who was on the original panel. Justice Robie honored the request and recused himself. Subsequently, a new panel was constituted and oral argument was again heard.

Having considered the matters raised in the original briefing and those relevant to that briefing in the oral argument, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

**The Flood Hazard & the Selected Project**

In 2008, the Federal Emergency Management Agency (FEMA), revoked accreditation of levees surrounding the Smith Canal in Stockton. The surrounding area

---

[2] Undesignated statutory references are to the Public Resources Code unless otherwise specified.

2

became a "special flood hazard area," an area expected to be inundated by a 100-year flood. The area includes 5,000 properties and 15,000 residents.

To address the flood risk and reacquire FEMA accreditation, the Agency evaluated several options, ultimately concluding the most cost-effective alternative was constructing a fixed flood wall and gate structure at the mouth of the Smith Canal.

In July 2013, with the Agency's authorization, proposals to build the Smith Canal Gate were sought from engineering firms. Two firms responded with proposals; one was Gulli's company, Green Mountain Engineering. In the proposal, Gulli suggested an alternative to a gate, explaining: "Normally [Green Mountain] would not pursue a [Statement of Qualification/Statement of Proposal] such as this since it should likely be awarded to the Engineers that performed the initial engineering, prepared the initial planning documents and obtained the funding. In this situation [Gulli] feels so strongly that the proposed gate is not a viable solution to the flood control issue . . . that [Green Mountain] is herewith submitting a proposal that will address the issues requested in the [Statements of Qualifications] as well as all of the potential solutions based on cost, schedule and [Urban Levee Design Criteria] compliance."

The other firm was unanimously selected, and the Agency entered into a consultant contract with it.

**The CEQA Process**

In June 2014, a notice of preparation of an EIR issued. A draft EIR circulated the following year (DEIR). The DEIR noted that several measures and alternatives had been considered but were not carried forward — including four alternatives proposed by Green Mountain. The Agency determined that none of the Green Mountain alternatives met the project objectives and were, therefore, not analyzed further.

After the DEIR issued, Gulli made public comments and submitted letters urging consideration of the Green Mountain proposals. Gulli made further public comments at

3

an Agency board meeting: "I believe there [are] much better solutions to this problem . . . ."

In late 2015, the final EIR circulated. It addressed the four alternatives proposed by Green Mountain and concluded none of them met the project objectives and were therefore not feasible. On November 19, 2015, the Agency certified the final EIR and the project was approved.

**The Writ Petition**

A month later, Gulli, acting in pro per, petitioned for a writ of mandate.[3] In his petition, he argued the selected gate proposal would damage the environment more than other possible solutions. He sought to, inter alia, vacate the EIR, suspend all activity, require the Agency to "thoroughly and completely review alternatives to rehabilitate the levees," and require that the Agency contract with him.

After a series of successful demurrers to certain causes of action, Gulli filed his third amended petition. In it, Gulli requested more circumscribed relief, limiting his causes of actions to CEQA claims.

Thereafter, the parties submitted briefs on the petition for writ of mandate. Gulli argued the Agency (1) restrained and failed to address public comments; (2) piecemealed the environmental review; (3) failed to recirculate the EIR after new information was discovered; (4) filed a false "notice of intent" and statement of overriding "circumstances"; (5) failed to notify interested parties; and improperly evaluated; (6) hydrodynamic and water quality impacts; (7) project alternatives; (8) visual impact; (9) flooding impacts; and (10) navigational safety hazards.

---

[3] A separate suit was filed by the Atherton Cove Property Owners Association. (Atherton) The lawsuits were deemed related and assigned to the same department. The Agency's request to take judicial notice of the attached documents in the Atherton case is granted.

4

**The Trial Court's Denial of the Petition**

The trial court denied the writ petition in a 31-page order.[4]  It noted that, under section 21168.5, its inquiry is limited to whether a prejudicial abuse of discretion exits — which is shown where the Agency has not proceeded in a manner required by law or where its determination is not supported by substantial evidence.

The trial court noted that Gulli's challenge was primarily that the Agency's determination was not supported by substantial evidence.  As such, Gulli bore the burden of demonstrating that the studies on which the EIR is based are " ' "clearly inadequate or unsupported." ' "[5]  To do so, Gulli must lay out the evidence favorable to the other side and show why it is lacking.  And, under CEQA guidelines, disagreements among experts do not make an EIR lacking.

The trial court found Gulli's arguments centered on a proposed alternative (upgrade a pumping station) that was "never raised or discussed during the CEQA process. . . .  Insofar as this now appears to be the basis of the challenge to the Project, those arguments are barred."  The court went on to explain that even if Gulli's current theories and opinion had been presented to the Agency for consideration, he would not prevail because a disagreement among experts does not render an EIR inadequate.  The court further noted that rather than laying out evidence favorable to the other side and showing why it was lacking, as he was required to do, Gulli had simply concluded the evidence was insufficient.  This was fatal to the challenge.

---

[4]  The court noted that Gulli had submitted "supplemental attachments," adding that to the extent the attachments were part of the final administrative record, the court had considered them where relevant.

[5]  The trial court cited this court's opinion in *Town of Atherton v. California High-Speed Rail Authority* (2014) 228 Cal.App.4th 314, 349-350.

The trial court also found no merit in Gulli's other contentions. In doing so, it noted the Agency had properly considered hydrodynamic impacts, project alternatives, visual impact, flooding impacts, and navigational safety hazards — and Gulli's differing opinion did not suffice for a successful challenge.

## DISCUSSION

On appeal, Gulli has opted to proceed in pro per, as he did before the trial court. Acting as his own attorney, he has filed appellate briefs that are difficult to follow and replete with procedural violations. We note that pro per litigants are required to follow the rules of appellate procedure; they are treated like any other party and receive no greater consideration. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.)

### I. Gulli's Code of Civil Procedure section 909 Request

Before the argument section of his opening brief, Gulli cites to Code of Civil Procedure section 909 (section 909) and asks that this court consider "additional evidence of other facts occurring prior to the decision of the appeal." In support, he argues: "1. The CEQA process was approved prematurely as . . . the [Agency] did not have enough information before them to make the proper decisions; [¶] 2. The record is incomplete as described in the pleadings; and [¶] 3. There is substantial additional evidence since the approval of the EIR . . . . The evidence also proves that the conclusions reached to approve the EIR were not based on substantial evidence." We deny the request.

Assuming that section 909 applies to challenge an agency's CEQA determinations,[6] that provision permits appellate courts to take additional evidence only

---

[6] Section 909 provides: "In all cases where trial by jury is not a matter of right or where trial by jury has been waived, the reviewing court may make factual determinations contrary to or in addition to those made by the trial court. The factual determinations may be based on the evidence adduced before the trial court either with or without the taking of evidence by the reviewing court. The reviewing court may for the purpose of making the factual determinations or for any other purpose in the interests of justice, take additional evidence of or concerning facts occurring at any time prior to the decision of

6

in exceptional circumstances. (*City of Petaluma v. Cohen* (2015) 238 Cal.App.4th 1430, 1438 fn.7.)

Here, no such exceptional circumstances appear. Gulli broadly asserts that the record is incomplete, that substantial additional evidence exists, and that evidence proves the EIR was not based on substantial evidence. But his claim is without support. Indeed, Gulli fails to specify what additional evidence or documents he wants us to consider. He makes only vague reference to the record being "incomplete as described in the pleadings." To the extent he is attempting to incorporate by reference trial court documents, it is inappropriate. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 295 fn. 20 (*Soukup*), citing *Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1301, fn. 2 [" 'it is not appropriate to incorporate by reference, into a brief, points and authorities contained in trial court papers, even if such papers are made a part of the appellate record' "].) And even if the documents were specified in his appellate briefing, Gulli's arguments in support are too conclusory and perfunctory to establish the exceptional circumstances required under section 909.

---

the appeal, and may give or direct the entry of any judgment or order and may make any further or other order as the case may require. This section shall be liberally construed to the end among others that, where feasible, causes may be finally disposed of by a single appeal and without further proceedings in the trial court except where in the interests of justice a new trial is required on some or all of the issues."

A separate provision in the Civil Code of Procedure addresses mandamus actions. Code of Civil Procedure section 1094.5, subdivision (e) provides: "Where the court finds that there is relevant evidence that, in the exercise of reasonable diligence, could not have been produced or that was improperly excluded at the hearing before respondent, it may enter judgment as provided in subdivision (f) remanding the case to be reconsidered in the light of that evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit the evidence at the hearing on the writ without remanding the case." (See *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 578.)

7

We also note that in addition to the exceptional circumstances requirement, section 909 "should be invoked sparingly, and only to affirm the case." (*Diaz v. Professional Community Management, Inc.* (2017) 16 Cal.App.5th 1190, 1213; *Golden West Baseball Co. v. City of Anaheim* (1994) 25 Cal.App.4th 11, 42; See also *Philippine Export & Foreign Loan Guarantee Corp. v. Chuidian* (1990) 218 Cal.App.3d 1058, 1090.) "[T]he evidence normally must enable the Court of Appeal to affirm the judgment, not lead to a reversal." (*Philippine Export*, at p. 1090.) Furthermore, " '[t]he power to take evidence in the Court of Appeal is never used where there is conflicting evidence in the record and substantial evidence supports the trial court's findings.' " (*Diaz*, at p. 1213.)

We deny Gulli's section 909 request.

## II. Adequacy of Administrative Record

Gulli contends the administrative record fails to conform to section 21167.6, subdivision (e), which enumerates 11 categories of documents that must be included in the record of CEQA proceedings. We disagree.

### A. Additional Background

Gulli initially elected, under section 21167.6, subdivision (b)(2), to prepare the administrative record himself. But three months after filing his writ petition, he stipulated with the Agency that the Agency would prepare the record and waive recovery of its costs. They also agreed that the Agency would give Gulli an index of documents proposed for inclusion and make them available for inspection. Gulli could either declare the index acceptable or offer revisions or additions. The Agency would then certify the record and lodge it with the court. The parties also agreed to meet and confer to resolve disputes and if either party disputed the record's scope or contents, "that Party [could] seek to augment or strike specific records by *timely* motion filed with the Court." (Italics added.)

Gulli was thereafter provided with a draft index. He then sent the Agency a spreadsheet listing 193 comments to the draft index. Counsel for the Agency responded:

8

"Many of your comments . . . were difficult to understand, did not identify a specific error in the Record, or stated generalized questions." Counsel, nevertheless, answered that the Agency had taken great care to ensure that documents required by section 21167.6, subdivision (e) were included. But privileged documents and confidential information would not be provided, nor would administrative drafts or documents related to non-CEQA claims.

Gulli responded by requesting specific responses to each of the 193 "tasks" identified in his spreadsheet. The Agency then prepared a spreadsheet responding to each comment. The responses indicated that in some instances new documents had been added to the record, in other instances, documents could not be found, in others, the documents had already been included, and in others, the documents were confidential or privileged.

In mid-2016, the Agency certified the record, and a month later, it certified a supplemental administrative record.

A year and a half after the certifications, Gulli filed a motion to "Correct, Supplement[,] and Augment" the record. He asked that numerous documents be included in the record. He also asked that certain documents pertaining to Green Mountain be removed from the record.

The Agency opposed the request, attaching an exhibit listing 27 documents Gulli identified as missing that were in fact included in the record. It also included an exhibit, listing documents Gulli requested that had never been presented to the Agency.

The trial court denied Gulli's motion. Its order explained: "The general rule in administrative mandamus actions is that judicial review is conducted solely on the record of the proceeding before the administrative agency. [Citation.] The reviewing court may receive additional evidence only if that evidence in the exercise of reasonable diligence, could not have been produced or was improperly excluded at the hearing before the

9

administrative agency.[7] [Citation.] Absent a proper preliminary foundation showing that one of the statutory exceptions applies, it is error for the court to permit the record to be augmented."

The order continued: "It appears that Petitioner is claiming that the thousands of pages of documents he seeks to admit contain information that contradicts Respondent, . . . Agency's claims regarding the adequacy of the [EIR] for the Smith Canal Gate . . . . The fact that conflicting information may exist does not establish that the Agency is involved in misconduct. Petitioner has failed to show that the documents that predate the administrative proceedings could not have been produced in the exercise of reasonable diligence or were improperly excluded at the administrative hearing."

The order also explained that Gulli had failed to provide any authority authorizing the court to augment the record with documents post-dating the Agency's approval of the project. And many of the documents Gulli sought to add were already included in the CEQA administrative record. Still others did not pertain to his CEQA claim. Finally, Gulli had failed to offer any legal basis for requiring the Agency to provide privileged documents or remove certain documents from the record.

## B. Analysis

On appeal, Gulli contends the record fails to comply with section 21167.6, subdivision (e) and argues that counsel for the Agency determined the contents of the record; the record failed to include prejudicial information; the record is burdensome, duplicative and unorganized; documents in the record were illegally redacted; and he was not allowed to correct, supplement, or augment the record. We find no error.

---

7 See fn. 6, *ante*.

10

Section 21167.6, subdivision (e) enumerates 11 items that must be included in the record of proceedings.[8] On appeal, we review for substantial evidence a trial court's findings of fact as to whether a document is part of the record, under section 21167.6,

---

[8] In full the list includes: "(1) All project application materials. [¶] (2) All staff reports and related documents prepared by the respondent public agency with respect to its compliance with the substantive and procedural requirements of this division and with respect to the action on the project. [¶] (3) All staff reports and related documents prepared by the respondent public agency and written testimony or documents submitted by any person relevant to any findings or statement of overriding considerations adopted by the respondent agency pursuant to this division. [¶] (4) Any transcript or minutes of the proceedings at which the decisionmaking body of the respondent public agency heard testimony on, or considered any environmental document on, the project, and any transcript or minutes of proceedings before any advisory body to the respondent public agency that were presented to the decisionmaking body prior to action on the environmental documents or on the project. [¶] (5) All notices issued by the respondent public agency to comply with this division or with any other law governing the processing and approval of the project. [¶] (6) All written comments received in response to, or in connection with, environmental documents prepared for the project, including responses to the notice of preparation. [¶] (7) All written evidence or correspondence submitted to, or transferred from, the respondent public agency with respect to compliance with this division or with respect to the project. [¶] (8) Any proposed decisions or findings submitted to the decisionmaking body of the respondent public agency by its staff, or the project proponent, project opponents, or other persons. [¶] (9) The documentation of the final public agency decision, including the final environmental impact report, mitigated negative declaration, or negative declaration, and all documents, in addition to those referenced in paragraph (3), cited or relied on in the findings or in a statement of overriding considerations adopted pursuant to this division. [¶] (10) Any other written materials relevant to the respondent public agency's compliance with this division or to its decision on the merits of the project, including the initial study, any drafts of any environmental document, or portions thereof, that have been released for public review, and copies of studies or other documents relied upon in any environmental document prepared for the project and either made available to the public during the public review period or included in the respondent public agency's files on the project, and all internal agency communications, including staff notes and memoranda related to the project or to compliance with this division. [¶] (11) The full written record before any inferior administrative decisionmaking body whose decision was appealed to a superior administrative decisionmaking body prior to the filing of litigation."

11

subdivision (e). (*Consolidated Irrigation Dist. v. City of Selma* (2012) 204 Cal.App.4th 187, 198.) Further, we specifically review the trial court's determination regarding the scope of the record; we do not review the agency's decision about what to include. (*Madera Oversight Coalition, Inc. v. County of Madera* (2011) 199 Cal.App.4th 48, 65 disapproved of on other grounds by *Neighbors for Smart Rail v. Exposition Metro Line Construction Authority* (2013) 57 Cal.4th 439, 457.) In doing so, we presume that the trial court's order is correct. (*Madera,* at p. 66.) To that end, an appellant must affirmatively demonstrate error and where the record is silent we "indulge all intendments and presumptions that support the order or judgment." (*Ibid.*)

Here, Gulli raises numerous arguments, but none demonstrates error in any trial court ruling regarding the scope of the record. Under the subheading, "THE [DEFENSE COUNSEL CONTROLLED] WHAT WAS PUT INTO AND WHAT WAS LEFT OUT OF THE RECORD," Gulli complains that a meet and confer never took place,[9] he asserts without explanation that his motion to correct the record "made it clear that the record was not complete and not in accordance with [section 21167.6]," and he argues the court's ruling "nearly plagiarized" the Agency's opposition. He also includes a list of 11 "items" he asks to be "corrected," including: "Documents that were in the Agencies files that were excluded from the record that should be included in the record" and "Documents generated after the EIR that contradict[] statements in the EIR . . . ."

---

[9] Gulli offers no citation to the record in support of his failure to meet and confer claim. (See *Air Couriers Internat. v. Employment Development Dept.* (2007) 150 Cal.App.4th 923, 928 (*Air Couriers*) [a party's brief must support the argument by appropriate reference to the record; we have no duty to search the record for evidence and may disregard factual contentions not supported by proper citation].) We note, however, that when the trial court imposed sanctions against Gulli, it cited as a court order violation that Gulli "did not meet and confer in good faith to resolve disputes regarding the contents of the administrative record in accordance with the Stipulation . . . ."

12

Under the subheading, "THE RECORD EXCLUDES CRITICAL [PREJUDICIAL] INFORMATION," Gulli avers numerous documents are not in the record, including a deed from 1919 and a 1963 quitclaim deed. He describes one document as "what led [to his] professional conclusion that the levees indeed meet [the] requirements of CFR 65.10 WITHOUT ANY CONJECTURE[,] (except for interior drainage)." He avers the exclusion of another document "precluded the public and decision makers from considering [the] option [provided by Green Mountain] as well as the extensive issues raised in the proposal." He also challenged the inclusion of a document provided by Green Mountain in the record, asserting, without explanation, that it violated Business and Profession Code sections 6700-6799.

Under the subheading, "THE RECORD IS BURDENSOME, DUPLICATIVE [AND] UNORGANISED," (*Sic.*) Gulli asserts the record is "NOT IN Chronological order . . . and includes numerous duplicate and unnecessary documents." He also lists numerous "Very Critical Documents," which he asserts are not included in the record.

Under the subheading, "THE RECORD ILLEGALLY REDACTED CRITICAL DOCUMENTS," Gulli takes issue with redactions in the record and asserts that he suffered prejudice. He describes one redaction as "obviously good for the public to know about and more important than privilege."

Finally, under the subheading, "THE ADMIN RECORD WAS NOT ALLOWED TO BE CORRECTED, SUPPLEMENTED AND AUGMENTED," Gulli appears to take issue with a portion of the trial court's order denying his petition where the court explained it had considered documents attached to Gulli's opening brief where relevant. He writes: "This is a misleading statement as all of the supplemental attachments are part of the admin record. The statement indicates that [the] court may have not considered some of the documents."

None of these arguments affirmatively demonstrate error in the trial court's implied ruling that the record conformed to section 21167.6, subdivision (e). Indeed,

13

none amount to more than a perfunctory claim. (See *Saltonstall v. City of Sacramento* (2015) 234 Cal.App.4th 549, 587-588 ["conclusory assertions regarding documents that should have been included in the administrative record fail to properly tender the issue for appellate review."].) We therefore conclude that substantial evidence supports the finding that the record complies with section 21167.6, subdivision (e).

At oral argument, however, Gulli emphasized one of the arguments he had raised under the heading, THE DEFENSE COUNCIL CONTROLLED WHAT WAS PUT INTO AND WHAT WAS LEFT OUT OF THE RECORD. He argued that it was a violation of section 21167.6, subdivision (b)(1)[10] and Civil Code of Procedure section 1094.5, subdivision (a)[11] for the administrative agency to pay the cost of preparing the administrative record. In his briefing, Gulli pointed to *River Valley Preservation Project v. Metropolitan Transit Development Bd.* (1995) 37 Cal.App.4th 154, which noted that, "*a . . . public policy argument could be made* that taxpayers . . . should not have to bear the cost of preparing the administrative record in a lawsuit brought by a private individual or entity." (*River Valley*, at p. 182, italics added.) We do not disagree with the *River Valley* court that such a public policy argument makes sense. But nothing in the statutes

---

[10] Section 21167.6, subdivision (b) provides: "(b)(1) The public agency shall prepare and certify the record of proceedings not later than 60 days from the date that the request specified in subdivision (a) was served upon the public agency. Upon certification, the public agency shall lodge a copy of the record of proceedings with the court and shall serve on the parties notice that the record of proceedings has been certified and lodged with the court. *The parties shall pay any reasonable costs or fees imposed for the preparation of the record of proceedings in conformance with any law or rule of court.*" (Italics added.)

[11] Civil Code of Procedure section 1094.5, subdivision (a) provides in pertinent part: "*Except when otherwise prescribed by statute*, the cost of preparing the record shall be borne by the petitioner." (Italics added.) Because section 21167.6, subdivision (b) governs CEQA actions, it is a provision "otherwise prescribed by statute" and Civil Code of Procedure section 1094.5, subdivision (a) does not apply here.

14

Gulli cites, nor in *River Valley*, prevents an agency from agreeing to absorb record preparation costs to avoid overall costs of litigation and/or facilitate the resolution of litigation. Indeed, given such considerations, a public policy argument *could be made* that agencies should have the flexibility to waive these costs. Moreover, Gulli stipulated to the agency paying these costs here, and having done so, he can hardly be heard to complain about the agreement he made. And, even if this purported violation had substance, it does not demonstrate error in the trial court's implied ruling that the record conformed to section 21167.6, subdivision (e). Furthermore, as we see it, the remedy would not be to reverse the trial court's determination or invalidate the agency's action, but rather to require Gulli to pay his share of the reasonable costs under section 21167.6, subdivision (b)(1) and effectively rescind the agreement of the parties — something we are not inclined to do.

### III. Necessity of the Project

Gulli next contends, "THE PROJECT IS NOT NEEDED FOR FLOOD PROTECTION," which he advances through arguments under three subheadings: (1) "[THE AGENCY] WITHHELD CRITICAL INFORMATION FROM THE EIR AND FAILED TO RECIRCULATE AFTER FEMA REVOKED THE CONDITIONAL LETTER OF MAP REVISION"; (2) "THE PROJECT AS STATED IN THE EIR DOES NOT REMOVE THE FEMA [FLOODPLAIN]"; and (3) "The CLOMR [CONDITIONAL LETTER OF MAP REVISION] WAS OBTAINED BY FILING A FALSE FEDERAL DOCUMENT." All lack merit.

#### A. Alleged Withholding of Information and Failure to Recirculate

Gulli's entire argument in his briefing, under the heading, "[THE AGENCY] WITHHELD CRITICAL INFORMATION FROM THE EIR AND FAILED TO RECIRCULATE AFTER FEMA REVOKED THE CONDITIONAL LETTER OF MAP REVISION," reads: "The failure to recirculate was stated in the opening brief [filed in the trial court] at page 18. The letter from FEMA was brought up by petitioner at the

15

hearing for the approval of the EIR. [The agency] was not even going to mention the document or issue. [¶] The decision not [to] circulate violated the Brown Act and is invalid. The board had no idea what was happening as the decision to not circulate was made by Scott Shapiro, Kathy Miller and Elbert Holman during a 10-minute recess."

We decline to reach this argument for three reasons. First, it rests upon the incorporation by reference of briefs filed in the trial court. (See *Soukup, supra*, 39 Cal.4th at p. 294, fn. 20 [" 'it is not appropriate to incorporate by reference, into a brief, points and authorities contained in trial court papers, even if such papers are made a part of the appellate record.' "].) Second, it cites facts to which no record citation are included anywhere in the brief. (See *Air Couriers, supra*, 150 Cal.App.4th at p. 928 [a party's brief must support the argument by appropriate reference to the record; we have no duty to search the record for evidence and may disregard factual contentions not supported by proper citation].) Third, it asserts, without explanation, a Brown Act violation. (See *People v. Oates* (2004) 32 Cal.4th 1048, 1068, fn. 10 ["Because defendant 'does not expand on the issue with either argument or citation to relevant authority,' we decline to address it"].)

## B. Removal of FEMA Floodplain

Next, under the heading, "THE PROJECT AS STATED IN THE EIR DOES NOT REMOVE THE FEMA [FLOODPLAIN]," Gulli argues "all that is required to remove the floodplain designation A is to upgrade the Wisconsin Pump."

While Gulli and his company Green Mountain submitted several proposals during the CEQA process, the specific suggestion of upgrading the pump to address flood risk was never mentioned in the EIR discussion of Green Mountain's alternatives, the recitation of Gulli's comments, or anywhere else in the EIR. Indeed, nothing indicates the idea was raised during the CEQA process. As the trial court noted, this is fatal to Gulli's claim. The doctrine of exhaustion of administrative remedies requires that alleged grounds for noncompliance be "presented to the public agency . . . during the

16

public comment period . . . or prior to the close of the public hearing . . . before the issuance of the notice of determination."  (Pub. Resources Code, § 21177, subd. (a); *A Local & Regional Monitor v. City of Los Angeles* (1993) 12 Cal.App.4th 1773, 1804 [doctrine of exhaustion bars challengers from raising issues not raised during the administrative process].)  " 'The purpose of the rule of exhaustion of administrative remedies is to provide an administrative agency with the opportunity to decide matters in its area of expertise prior to judicial review.  [Citation.]  The decisionmaking body " 'is entitled to learn the contentions of interested parties before litigation is instituted.  If [plaintiffs] have previously sought administrative relief . . . the Board will have had its opportunity to act and to render litigation unnecessary, if it had chosen to do so.' " ' " (*State Water Resources Control Bd. Cases* (2006) 136 Cal.App.4th 674, 794.)

Gulli responds that he mentioned the pump upgrade in his third amended petition. He also points to a reference to "back water flooding" in the CEQA record and cites multiple references to the Wisconsin Pump Station in the CEQA record.

The amended petition is of no moment as it postdates the administrative process and obviously could not have been considered by the Agency before it made its determination.  And neither the vague references to back water flooding nor the isolated references to the Wisconsin Pump Station sufficed to bring the claim to the Agency's attention.  (See *Sierra Club v. City of Orange* (2008) 163 Cal.App.4th 523, 535–536 [" '[t]he "exact issue" must have been presented to the administrative agency' . . . 'bland and general references to environmental matters' . . . will not suffice"].)

And even if the pump upgrade proposal had been raised and rejected during the CEQA process, a different result would not follow, as Gulli raises what amounts to a disagreement amongst experts as to the best solution to address flooding.  (Cal. Code Regs., tit. 14, § 15151 ["Disagreement among experts does not make an EIR inadequate . . . ."].)

17

### C. Alleged Fraud in Obtaining Conditional Letter of Map Revision

Under the heading, "THE CLOMR [CONDITIONAL LETTER OF MAP REVISION] WAS OBTAINED THROUGH THE FILING OF A FALSE FEDERAL DOCUMENT," Gulli advances the following argument, read in full: "The Superior Court Ignored the false federal forms that have propelled this defective project. Consultants for the agency and proponents of the project made and signed a false statement on a federal document. It is also clear [from] the record that a steel dam with engineered fill built in the San Joaquin River is fill within a Regulatory floodway by the document to be corrected in the 01325 states that '*the state lands commission will require a lease for placement of fill within the navigable water way[.]*' [¶] As stated on the form this is a violation of Title 18 of the United States Code, Section 1001. In addition, it appears to violate [California] Government Code 12560-121656 et seq[.]"

To the extent it can be understood, this argument fails to specify what document is being referred to, how it was false, and how any state and federal laws were violated. Having no obligation to make an argument on behalf of an appellant, we decline to do so here. (See *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 ["Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived"].)

### IV. Asserted Failure of EIR to Inform the Public and the Decisionmakers of Environmental Impacts

Gulli next contends "THE EIR DID NOT INFORM THE PUBLIC AND ITS ELECTED OFFICIALS OF THE ENVIRONMENTAL CONSEQUENCES." Under this heading, he raises eight arguments under the following headings: [1] CEQA PROCEDURES WERE NOT ADHERED TO; [2] FALSE STATEMENTS OF FACTS AND OVERIDING CIRCUMSTANCES; [3] FAILURE TO NOTIFY INTERESTED PARTIES; [4] HYDRODYNAMIC IMPACTS; [5] ALTERNATIVES; [6]

FLOODING IMPACTS; [7] VISUAL IMPACTS; and [8] NAVIGATIONAL SAFETY HAZARDS. We disagree.

## A. CEQA Procedures

Gulli argues the EIR failed to address two comments: (1) a letter from Len Marino, noting that the project must be approved by the U.S. Army Corp of Engineers; and (2) a letter from Gulli, stating that placing fill in the river and reducing the opening of the Atherton Cove/Smith Canal will increase the flood stage.[12]

As to the Marino letter, as the trial court noted, the final EIR reflects that the Agency contacted the Army Corps of Engineers and determined its permission was not required. On appeal, Gulli maintains there is no evidence of this in the EIR or the record. But the EIR's reflection that the Corps of Engineers was contacted *is* evidence of such. And it is Gulli's burden to show otherwise.[13] (See *South of Market Community Action Network v. City and County of San Francisco* (2019) 33 Cal.App.5th 321, 329 [" ' " ' "[A]n EIR is presumed adequate (Pub. Resources Code, § 21167.3), and the plaintiff in a CEQA action has the burden of proving otherwise" ' " ' "].)

As to the letter from Gulli, the trial court concluded that while the EIR did not specifically respond to the concern that placing fill in the river would increase the flood

---

[12] In his reply brief, Gulli additionally contends the EIR failed to address comments by Stockton Golf and Country Club. We have no duty to respond to arguments raised for the first time in the reply brief and, good cause not being shown, decline to do so here. (*People v. Baniqued* (2000) 85 Cal.App.4th 13, 29 ["a point raised for the first time therein is deemed waived and will not be considered, unless good reason is shown for failure to present it before"].)

[13] In support, Gulli cites to a letter from the Army Corp of Engineers, dated April 17, 2019, stating that "a component of your request falls within real property . . . managed by . . . the [Corp of Engineers]." Nothing in that letter — coming nearly five years after the final EIR was certified — undermines the finding that the EIR responded in good faith with reasoned analysis to the Marino letter. (See Cal. Code Regs., tit. 14, § 15088.)

19

stage, no prejudice resulted because, elsewhere, the EIR examined whether the project would significantly raise the flood stage and concluded it would not.

Gulli responds that "[t]he issue is not the amount of increase in stage but the false federal document." He goes on to claim that it was falsely stated that the proposal would not result in fill being placed in the regulatory floodway. This argument amounts to a disagreement amongst experts and in no way establishes a failure to comply with CEQA procedures in addressing comments. The contention thus fails.

### B. The Statement of Overriding Considerations[14]

Gulli takes issue with the trial court's finding that he failed to provide any evidence that the statement of overriding considerations was false. He asserts that "the reviewing court is required to review the appellant[']s opening brief and reply brief for evidence, for which there is substantial evidence." He goes on to quote at length from his opening brief submitted to the trial court: "*This statement is materially false and not supported by evidence in that the affected area will not be removed from the 100-yr floodplain until the Wisconsin Pump Station interior drainage issue is resolved, which in itself WILL remove the area.*"

Again, Gulli has raised what amounts to a difference in opinion — essentially that the statement of overriding considerations was false because his idea was not selected. That does not suffice to invalidate an EIR. (*North Coast Rivers Alliance v. Marin Municipal Water Dist. Bd. of Directors* (2013) 216 Cal.App.4th 614, 643 ["The court's role is not to ' " 'weigh the evidence adduced before the agency or substitute its judgment

---

[14] Gulli refers to the agency determination as a statement of overriding "circumstances." The determination is properly known as a statement of overriding considerations. (Guidelines, § 15093; *California Native Plant Society v. City of Santa Cruz* (2009) 177 Cal.App.4th 957, 983.) We refer to it by its correct name.

for that of the agency' " ' "].)  Concomitantly, Gulli has failed to show that substantial evidence did not support the statement of overriding considerations.

### C.  Failure to Notify Interested Parties

Gulli argues the U.S. Coast Guard is an interested party and has not been notified of the project.  This contention was not raised before the trial court and is therefore forfeited.  Were it preserved, it would still fail as the record shows that the EIR was provided to the Coast Guard.

### D.  Evaluation of Hydrodynamic Impacts

Gulli argues the EIR is legally insufficient because it used the wrong Manning's coefficient for calculating water flow.  This contention fails for two reasons.  First, Gulli fails to show the issue was raised during the CEQA process, and thus it is barred by the doctrine of exhaustion.  (§ 21177.)  Second, it amounts to a disagreement among experts.

### E.  Evaluation of Project Alternative

Gulli's next contention is difficult to follow, but he appears to again argue that upgrading the Wisconsin Pump was the superior solution.  As we have explained, that contention is barred by the doctrine of exhaustion, and furthermore it amounts to a disagreement among experts.

### F.  Evaluation of Flooding Impacts

Gulli's next argument reads in full:  "The residual flooding from the Yosemite Lake pump station indicate[s] worse flooding than exists on the current map.  [Citation.]  The results of not fixing the Wisconsin Pump station add[s] to this large flood plain.  [¶]  The impact of placing fill in the regulatory floodway is required by FEMA flood regulations and has been ignored."

This argument appears to overlap with several contentions discussed above.  As a whole, it fails to raise any cognizable contention as far as we can discern.  We therefore decline to address it beyond noting that flood risks were specially addressed in the final EIR.

21

## G. Visual Impacts

Gulli next argues the "cover of the EIR should have shown the Gate on the picture of Atherton Cove and Dad's point. Showing it in its existing condition leads one to believe that there is no structure going in at this location." In support, he points to CEQA Guidelines, § 15140, which permits the use of "appropriate graphics so that decisionmakers and the public can rapidly understand the documents" and Guidelines, § 15147, which directs that an "EIR shall include summarized technical data, maps, plot plans, diagrams, and similar relevant information sufficient to permit full assessment of significant environmental impacts by reviewing agencies and members of the public." (Cal. Code Regs., tit. 14, §§ 15140, 15147.)

This contention is meritless. The cited authority in no way leads to the conclusion that the EIR is invalid for failure to include an image of the proposed gate on the cover.

## H. Navigational Safety Hazards

Gulli finally argues that the gate selected by the Agency "will be less safe than what exists today." In support, he refers to his own comments at the hearing on the writ petition before the trial court, wherein he referenced a ferry damaged by "increased velocities caused by the False River Salinity Barrier." He also cites *Paterno v. State of California* (2003) 113 Cal.App.4th 998, 1003, for the proposition that "[w]hen a public entity operates a flood control system built by someone else, it accepts liability as if it had planned and built the system itself." Further, the public entity may be liable where the system is flawed, and a feasible cure could have fixed the problems. (*Ibid.*)

To the extent this argument can be understood, it appears to, yet again, amount to Gulli's opinion that his solution is superior. The contention accordingly fails.

## DISPOSITION

The judgment is affirmed.  Gulli shall pay the Agency's costs on appeal.  (Cal. Rules of Court, rule 8.278.)

                                                              /s/
                                                        MURRAY, J.

We concur:

    /s/
RAYE, P. J.

    /s/
BLEASE, J.